UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MARY EBERHARDT                                                                    PLAINTIFF

v.                                              CIVIL ACTION NO. 3:15-cv-00063-CRS-DW

UNITED STATES OF AMERICA                                                          DEFENDANT

Memorandum Opinion

I.  Introduction

This matter is before the Court on Defendant United States of America's motion for summary judgment under Federal Rule of Civil Procedure 56(a). Eberhardt responded to the motion for summary judgment, ECF No 29.[1] The United States replied, ECF No. 31. For the reasons set forth below, the Court will grant the United States' motion for summary judgment.

II.  Background

Eberhardt asserts that the Robley Rex Veterans Administration Medical Center in Louisville, Kentucky (VAMC) treated her for renal stones in February 2013. Compl. ¶ 6, ECF No. 1. She underwent a procedure known as extracorporeal shock wave lithotripsy. *Id*. She alleges that the lithotripsy machine caused her to sustain burning, blistering, and tearing to her skin as a result of an interior wiring defect in the machine. *Id*. She further asserts that her skin became necrotic and eventually required skin graft surgery, and that she ultimately suffered nerve damage at the graft site. *Id*. Eberhardt sued the United States for negligence. *Id*. ¶¶ 8, 9, 11.

---

[1] The Court granted Eberhardt leave to file her response to the motion for summary judgment after the time for filing had lapsed and ordered her tendered response filed. Order Jan. 1, 2017, ECF No. 28.

In a parallel state court action ("the state court suit") filed in the Jefferson County, Kentucky Circuit Court, Eberhardt asserts claims against a variety of defendants for negligently training, instructing, maintaining, and operating the lithotripsy machine. State Ct. Compl. ¶¶ 17–20, ECF No. 23-2. She also asserts a failure to warn claim and a loss of consortium claim in her state court suit. *Id.* ¶¶ 19–20, 24. The United States is not a party to the state court suit.

Magistrate Judge Dave Whalin made several rulings in this case. In March 2016, he ordered Eberhardt to disclose her expert witnesses by June 27, 2016. Order Mar. 10, 2016, ECF No. 20. After a telephonic status conference on August 4, 2016, the magistrate judge stayed the deadline for the United States' disclosure of expert witnesses. Order Aug. 4, 2016, ECF No. 22. At that time, he also ordered the United States to produce information regarding how the VAMC inspected the lithotripsy machine that had caused Eberhardt's injuries by August 15, 2016. *Id.* The magistrate judge did not order the production of witnesses by either party. *Id.*

About a month after the deadline for disclosing expert witnesses in her federal court case passed, Eberhardt's counsel emailed counsel for the United States. Frederick Email July 27, 2016, ECF No. 31-3. He asserted that depositions of several VAMC employees were necessary to support Eberhardt's federal case. *Id.* In response, the counsel for the United States wrote, "As it stands, I do not believe your [sic] have disclosed any expert opinion criticizing the VAMC. Your deadline for expert testimony has passed. I do not mind scheduling depositions for your state court case, but would like the federal case to be dismissed first." Ekman Email July 27, 2016, ECF No. 31-3. Eberhardt's counsel replied, "I don't think I necessarily need an expert. I still want to take those depositions and then we will see what I need to make my case." Frederick Email July 29, 2016, ECF No. 31-3.

2

As part of her state court suit, Eberhardt deposed Robert Hawkinson, an X-ray technician who worked for Ohio Mobile Lithotripsy. Hawkinson Dep. 4, 7, ECF No. 31-1. Hawkinson confirmed that he had provided lithotripsy services to the VAMC on the day Eberhardt was injured through a contract that Ohio Mobile Lithotripsy had with the VAMC. *Id.* at 17–23, 48–49. Hawkinson testified that the lithotripsy machine that caused Eberhardt's injury had been taken out of service shortly after the incident. *Id.* at 41–42. When Hawkinson had been trained on the lithotripsy machine, he was taught that a fail-safe devise would automatically shut off the machine if it exceeded a certain temperature. *Id.* at 105. A service technician later told him that there had been a short in the lithotripsy machine's temperature control and that an "overrive that sets off the error code to the machine . . . had somehow been breached." *Id.* at 57–58.

Hawkinson also testified during his deposition about the process by which he provides lithotripsy services to the various hospitals that have contracts with Ohio Mobile Lithotripsy. He stated that he sets up the lithotripsy machine at the hospitals, cleans the machine, and checks to see if the machine is working. *Id.* at 24, 50. Hawkinson explained that the lithotripsy machine engages in a self-check process but that he always checks to see if the machine's vacuum pump is working. *Id.* at 50–51. After the patient is anesthetized, Hawkinson adjusts the lithotripsy machine to perform the procedure, X-rays the patient to find the kidney stone, and engages the stone with lithotripsy. *Id.* at 24–25.

Hawkinson also explained that the VAMC employs a biomedical engineering technician who inspects at the lithotripsy machine for errors. *Id.* at 133. According to Hawkinson, the VAMC biomedical engineering technicians focus their inspection mostly on the external electrical safety of the lithotripsy machine. *Id.* at 134. They do not examine the inside of the machine. *Id.* Drawing upon this observation, Hawkinson opined that such a visual inspection of

3

the lithotripsy machine could not have discovered the problems in the machine's internal components that led to Eberhardt's injuries. *Id.*

Ryan Pagel is a biomedical engineering technician employed by the VAMC. Pagel Aff. ¶ 1, ECF No. 31-2. In his affidavit, he affirmed Hawkinson's explanation of the VAMC's inspection of the lithotripsy machine. Pagel explained that during an external inspection, he ensures that the lithotripsy machine does not have any visible flaws. *Id.* ¶ 3. He also reviews paperwork provided by the contractor to learn when the lithotripsy machine was last tested for proper grounding and whether it passed the test. *Id.* ¶ 6. According to Pagel, the VAMC "relies upon its contractors to ensure that the contractor's lithotripsy devices are calibrated, function properly, and are properly grounded." *Id.* ¶ 5.

III.   Discussion

The United States now moves for summary judgment on Eberhardt's negligence claim. Mem. Supp. Mot. Summ. J. 1, ECF No. 23-1. The parties disagree about (1) whether further discovery is required before the Court rules on the United States' motion for summary judgment, (2) whether summary judgment should be granted on Eberhardt's negligence claim because she failed to provide an expert witness in support, and (3) whether the United States waived contractor sovereign immunity for actions undertaken by Ohio Mobile Lithotripsy. Mem. Supp. Mot. Summ. J. 3–7, ECF No. 23-1; Resp. Opp. Mot. Summ. J. 3–9, ECF No. 29; Reply 5–15, ECF No. 31.

    A.    Whether Further Discovery is Required before the Court Rules on the Motion for Summary Judgment

As an initial matter, Eberhardt maintains that the United States should be required to present its employees and agents for a deposition—as she asserts was ordered by the magistrate judge—before the Court rules on the motion for summary judgment. Resp. Opp. Mot. Summ. J.

6, ECF No. 29. The United States, however, argues that no further discovery is necessary for the Court to rule on its motion for summary judgment. Reply 5–7, ECF No. 31.

Under Federal Rule of Civil Procedure 56(d), a court may defer a ruling on a motion for summary judgment if "a nonmovant shows by affidavit or declaration, that, for specified reasons, it cannot present facts essential to justify its opposition." The court may also allow the nonmovant to seek additional discovery before ruling on the motion. *Id*.

In this case, Eberhardt does not provide specific reasons for why she is unable to respond to the United States' motion for summary judgment after two years of litigation. She generally states that the depositions she seeks are "vital to her case" and that, if denied access to these depositions, she "will be greatly prejudiced, her hands will be tied, and she will be denied access to the facts necessary to pursue her case." Resp. Opp. Mot. Summ. J. 4–5, ECF No. 29.

But Eberhardt appears unable to even explain what these intended depositions would show or whether she has any independent support for her assertions that the VAMC engaged in wrongdoing. She summarily states:

> Why did the machine malfunction and burn Ms. Eberhardt? The malfunction may have occurred because the manufacture/design was defective. It is also plausible that the VA Medical Center violated its own policy for inspection and/or verification that the equipment was in good working condition. Or, perhaps, both could be true, necessitating a determination of comparative fault.

Eberhardt's speculations about what questions additional discovery *could* or *might* show do not justify delaying a ruling on the United States' motion for summary judgment.

Moreover, contrary to Eberhardt's assertions, the magistrate judge never ordered the United States to present its employees and agents for a deposition; instead, he ordered the United States to produce information regarding how the VAMC inspected the lithotripsy machine that caused Eberhardt's injuries by August 15, 2016. Order Aug. 4, 2016, ECF No. 22. The order did

not discuss the production of witness testimony by either party. *Id*. Given that Eberhardt fails to meet the requirements of Rule 56(d), no further discovery is required before the Court rules on the United States' motion for summary judgment.

> B. <u>Whether Summary Judgment is Appropriate for Eberhardt's Failure to Provide Expert Testimony in Support of her Negligence Claim</u>

The Court now turns to the United States' motion for summary judgment. Before granting a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of establishing the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party satisfies this burden by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). When resolving a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The Federal Tort Claims Act (FTCA) is the exclusive remedy for suits sounding in tort against the United States or against its agencies. 28 U.S.C. § 2679. The FTCA applies in this case because Eberhardt's negligence claim sounds in tort and is asserted against the United States. The FTCA "waives sovereign immunity to the extent that state-law would impose liability on a private individual in similar circumstances." *Young v. United States*, 71 F.3d 1238, 1241 (6th Cir. 1995) (citing *Myers v. United States*, 17 F.3d 890, 899 (6th Cir. 1994)).

Generally, the FTCA is interpreted consistent with the law of the state where the event giving rise to liability occurred, which, here, is Kentucky. *Id*. at 1242; Compl. ¶ 3, ECF No. 1. In Kentucky, a common law negligence claim requires proof of (1) a duty owed by the defendant to

the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury. *Wright v. House of Imps., Inc.*, 381 S.W.3d 209, 213 (Ky. 2012).

The United States argues that summary judgment should be granted because Eberhardt has not provided expert testimony to support a medical negligence claim. Mem. Supp. Mot. Summ. J. 3, ECF No. 23-1. Eberhardt maintains, however, that expert testimony is not required in this case because the doctrine of *res ipsa loquitur* applies. Resp. Opp. Mot. Summ. J. 7–9, ECF No. 29.

Because of the complexity of medical procedures, medical negligence generally must be "established by medical or expert testimony." *Johnson v. Vaughn*, 370 S.W.2d 591, 596 (Ky. 1963). Thus, a "plaintiff bringing a typical medical malpractice case is required by law to put forth expert testimony to inform the jury of the applicable medical standard of care, any breach of that standard and the resulting injury." *Blankenship v. Collier*, 302 S.W.3d 665, 675 (Ky. 2010). And "[t]o survive a motion for summary judgment in a medical malpractice case in which a medical expert is required, the plaintiff must produce expert evidence or summary judgment is proper." *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006).

A plaintiff asserting medical negligence may proceed without an expert only in two limited circumstances in which the doctrine of *res ipsa loquitur* applies. *Blankenship*, 302 S.W.3d at 670. First, an expert is not necessary when the medical negligence is "so apparent that laymen with a general knowledge would have no difficulty in recognizing it." *Johnson*, 370 S.W.2d at 596. For example, no expert witness was needed to prove medical negligence when a doctor misdiagnosed his pregnant patient as having a uterine tumor and then also failed to perform a pregnancy test before the surgery. *Jarboe v. Harting*, 397 S.W.2d 775, 778 (Ky.

7

1965). Similarly, no expert witness was needed to prove medical negligence when a dentist who extracted a tooth left tooth fragments in the patient's socket that were easily discovered by another dentist. *Butts v. Watts*, 290 S.W.2d 777, 780 (1956); *see also Laws v. Harter*, 534 S.W.2d 449, 451 (Ky. 1975) (holding that *res ipsa loquitur* applied when a surgeon left a sponge in the patient's body cavity); *Meiman v. Rehabilitation Center, Inc.*, 444 S.W.2d 78, 80 (Ky. 1969) (finding that *res ipsa loquitur* applied when a physician broke a patient's leg during physical therapy).

Second, an expert witness is not necessary when the defendant doctor "makes certain admissions that make his negligence apparent." *Blankenship*, 302 S.W.3d at 670 (citing *Perkins v. Hausladen*, 828 S.W.2d 652, 655 (Ky. 1992)). For instance, in *Goodwin v. Hertzberg*, a case cited with approval by the Kentucky Court of Appeals in *Butts*, 290 S.W.2d at 778–79, a surgeon performed an operation in which it was necessary to use care not to puncture the patient's urethra. 201 F.2d 204, 205 (D.C. Cir. 1952). The surgeon punctured the urethra. *Id*. On the witness stand, the surgeon stated, "I must have made the opening myself in the process of operation. I am only human." *Id*. The court determined that no expert witness was needed to prove medical negligence because of this admission. *Id*.

Here, because of the complexity of the lithotripsy procedure and mechanics, the *res ipsa loquitur* theory of liability does not apply and Eberhardt's negligence claim against the United States reasonably requires an expert witness under Kentucky law.[2] Eberhardt was required to disclose her finalized expert report by June 27, 2016. Agreed Order, ECF No. 20. She still has not yet done so. Therefore, even taking the facts in the light most favorable to Eberhardt, summary judgment is appropriate on her negligence claim.

---

[2] Eberhardt does not allege or argue that the VAMC physicians made certain admissions that made their negligence apparent.

Eberhardt alternatively contends that expert testimony is not required in this case because her negligence claim involves only ordinary negligence that "revolves around the VA Medical Center's compliance with its own policies requiring verification that safe, working equipment be used in its facility." Resp. Opp. Mot. Summ. J. 6–7, ECF No. 29. The United States responds that even if the claim is one of ordinary negligence, the Court still should grant summary judgment because (1) Eberhardt never placed the United States on notice at the administrative level that she planned to assert a claim of ordinary negligence arising from the actions taken by the biomedical engineering technicians and (2) this theory of liability still requires her to produce technical expertise opinion testimony, which she has failed to do. Reply 7–8, ECF No. 31.

To maintain a suit under the FTCA, a party first must file an administrative claim with the federal agency against whom the suit is maintained. 28 U.S.C. § 2675(a). The administrative claim requirement is meant to "establish a means of efficiently settling meritorious accident claims without resort to expensive and time-consuming litigation." *Downs v. United States*, 382 F. Supp. 713, 728 (M.D. Tenn. 1974), *rev'd on other grounds*, 522 F.2d 990 (6th Cir. 1975). Thus, the United States needs "notification of an accident, the amount of damages sought to be recovered, and sufficient factual information to enable the appropriate federal agency to conduct an investigation to determine if the claim justifies settlement." *Id*. If the party fails to comply with the administrative requirement of the statute, the claims against the federal agency must be dismissed. *Exec. Jet Aviation v. United States*, 507 F.2d 508, 515 (6th Cir. 1974).

For example, in *Harvey v. United States*, a case in front of this Court, the plaintiff moved for leave to file an amended complaint. No. 3:09-cv-122-S, 2010 U.S. Dist. LEXIS 50160, at *1 (W.D. Ky. May 20, 2010). The plaintiff's administrative claim notified the federal agency that she had received negligent care from a surgeon at Ireland Army Community Hospital in Fort

Knox, Kentucky. *Id*. at *2. According to her administrative claim, the surgeon had left excess tissue in the plaintiff's neck, along with a surgical clip. *Id*. at *2–3. The plaintiff sought to amend her complaint by expanding her claims to include allegations that the surgeon had failed to evaluate her symptoms and to perform appropriate testing before the surgery. *Id*. at *3–4. This Court found that the plaintiff's administrative claim failed to mention any impropriety that had allegedly occurred before the surgery. *Id*. at *6. While the United States might have reviewed the records of the events that had occurred before the surgery, "there was no 'factual predicate' in the administrative claim which would have put the United States on notice to evaluate its potential liability" regarding these events. *Id*. at *8. Accordingly, this Court concluded that the plaintiff failed to exhaust her administrative remedies regarding her claims for events occurring before the surgery and denied the plaintiff's motion to amend the complaint. *Id*. at *9.

> Similarly, in this case, Eberhardt asserted the following administrative claim:
>
> Mrs. Eberhardt had right ESWL (extracorporeal shock wave lithotripsy) for renal stone at VA Medical Center in Louisville, KY. Client suffered 3rd degree burns after procedure. Surgeon was Dr. Natalia Ballesteros (resident) and Attending Surgeon Dr. Kerry L. Short[.]

Administrative Claim 2, ECF No. 31-4. This administrative claim concerns the conduct of the physicians involved in the lithotripsy procedure, Dr. Ballesteros and Dr. Short. It reasonably fails to notify the United States that Eberhardt is also or alternatively alleging that the VAMC was ordinarily negligent because it failed to comply with its own policies requiring verification that safe, working equipment be used in its facility. Thus, Eberhardt has not exhausted her administrative remedy regarding an ordinary negligence claim and thus the claim, if it sounds in ordinary negligence, must be dismissed.

Regardless of whether Eberhardt's administrative claim provided the government with adequate notice of her theory of the case, her claim, if arising under an ordinary negligence

10

theory of liability, still requires expert testimony, which she has failed to provide. Kentucky law mandates expert testimony in negligence cases, except when the defendant's negligence is so apparent that a layperson would recognize it. *Boland-Maloney Lumber Co. v. Burnett*, 302 S.W.3d 680, 686, (Ky. Ct. App. 2009). *See also Stephens v. Denison*, 150 S.W.3d 80, 82 (Ky. Ct. App. 2004) (requiring expert witness testimony in claims of legal malpractice, except when "the negligence is so apparent that a layperson with general knowledge would have no difficulty recognizing it"); *Butts,* 290 S.W.2d at 779 (generally requiring expert witness testimony in cases involving dental malpractice); *Adkins v. CSX Transp., Inc.*, No. 2010-CA-001139-MR, 2011 Ky. App. Unpub. LEXIS 540, at * 11–12 (Ky. Ct. App. July 22, 2011) (generally requiring expert witness testimony in cases involving railroads because "the business of operating a railroad entails technical and logistical problems with which the ordinary layman has had little or no experience") (internal citation omitted).

 Taking all evidence in the light most favorable to Eberhardt, a layperson does not have enough experience to decide whether the VAMC was ordinarily negligent by failing to comply with its own policies requiring verification that safe, working equipment be used in its facilities. The VAMC's policies do not require its biomedical engineering technicians to inspect the internal components of the lithotripsy machine; instead, the VAMC "relies upon its contractors to ensure that the contractor's lithotripsy devices are calibrated, function properly, and are properly grounded." Pagel Aff. ¶ 5, ECF No 31-2.

 A report generated by Timothy Hooks, a former biomedical engineering technician, *see* Hooks Resume, ECF No. 31-5, also shows that technical knowledge is needed to understand the operation, maintenance, and testing of the lithotripsy machine. In the conclusion of his report, Hooks uses specific standards and technical words that a layperson reasonably would have

11

difficulty understanding and thus indicate that an expert witness is required for Eberhardt's negligence claim:

> The IBJU white paper article says that there were a total of two temperature sensing components. One thermister for the water-filled cushion and one backup thermostat that had faulty wiring. Without the schematic diagrams and other information, I can't make a statement that the thermister of the water-filled cushion was malfunctioning since it could have been the heater controller itself malfunctioning or the relay as indicated on the service records SR# 9061 SSIMO 3/18/2013 or SR# 9063SSIMO 3/21/2013; unless it was included with the aforementioned parts as an assembly when they were replaced. If the primary cause of the failure were determined to have been the backup thermostat that is one thing, but the temperature on most electrical/electrical [sic] systems are not controlled by the backup switch that is why they are referred to as the "backup" because it is secondary to the primary controller, which in this case is usually incorporated into the heater controller hence the name "heater controller."

Hooks Report 9, ECF No. 31-6.

As noted above, Eberhardt was required to disclose her finalized expert report by June 27, 2016. Agreed Order, ECF No. 20. She still has not yet done so. Because Eberhardt failed to provide any expert testimony to explain a claim sounding in ordinary negligence, as required under Kentucky law, summary judgment is appropriate.

C.     Sovereign Immunity for Contractor Negligence

The United States alternatively argues that summary judgment should be granted because this Court does not have jurisdiction over her federal complaint. Mem. Supp. Mot. Summ. J. 7, ECF No. 23-1. The United States explains that Eberhardt sued Ohio Mobile Lithotripsy, LLC in the state court suit. *Id*. It asserts that Ohio Mobile Lithotripsy, LLC is a government contractor and that the United States has not waived its sovereign immunity for the tortious acts committed by government contractors. *Id*. Thus, the United States insists, the Court cannot hear the federal complaint. *Id*.

The United States enjoys sovereign immunity for actions committed by government contractors. *See* 28 U.S.C. § 2671. And Ohio Mobile Lithotripsy, LLC is an independent government contractor. *See* Hawkinson Dep. 17–23, 48–49, ECF No. 31-1 (explaining that Ohio Mobile Lithotripsy, LLC has a contract with the VAMC to provide lithotripsy services). But, as discussed above, Eberhardt alleges either that the VAMC physicians were negligent in their provision of medical care or that the VAMC biomedical engineering technicians were negligent in ensuring that the lithotripsy machine was in a safe and working condition. These claims do not solely implicate actions undertaken by employees of Ohio Mobile Lithotripsy, LLC; they also involve those taken by staff members of the VAMC. Therefore, the United States' sovereign immunity argument is unavailing.

IV.  Conclusion

The Court will grant the motion of the United States for summary judgment. The Court will dismiss the complaint with prejudice. An order will be entered in accordance with this opinion.

February 16, 2017

**Charles R. Simpson III, Senior Judge**
**United States District Court**